**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

| | | |
|---|---|---|
| ADAM STILES, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:22-cv-04405 |
| MOBILE FIDELITY SOUND LAB, INC., | ) ) ) | Honorable Manish S. Shah |
| Defendant. | ) ) ) | JURY TRIAL DEMAND |

---

## DEFENDANT'S ANSWER TO PLAINTIFF'S
## CLASS ACTION COMPLAINT AND JURY DEMAND

Defendant Mobile Fidelity Sound Lab, Inc. ("Defendant"), by counsel, hereby responds to Plaintiff Adam Stiles' Class Action Complaint (the "Complaint"). For ease of reference, the allegations of the Complaint are set forth verbatim (in italics, but without pictures), with Defendants' responses following each allegation. The repetition of the Complaint's allegations is done solely for organizational purposes and is not an admission as to their truth. Defendant denies each and every allegation and/or statement in Plaintiff's Complaint except as is expressly admitted or alleged hereinafter.

## *CLASS ACTION COMPLAINT*

*Plaintiff Adam Stiles ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Defendant Mobile Fidelity Sound Lab, Inc. ("MoFi" or "Defendant"). Plaintiff makes the following allegations based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.*

## *NATURE OF THE ACTION*

1.      *This is a class action suit brought against Defendant for the production and sale of vinyl records labeled as "Original Master Recording" or records sold as part of the "Ultradisc One Step" series (the "Records").*

**ANSWER:**   Defendant admits that Plaintiff purports to bring this lawsuit as a class action, but denies the basis for such an action and denies this action meets class certification requirements. Except as otherwise admitted, denied.

2.      *As discussed throughout this Complaint, Defendant advertised the Records as being purely analog recordings—i.e., directly from the master recording or original analog tapes— without any sort of digital mastering process. Defendant also charged a price premium for the Records based on the same. And indeed, these representations used to be true.*

**ANSWER:**   Defendant denies the allegations in this paragraph.

3.      *However, since 2011, Defendant has been using digital mastering or digital files—specifically, Direct Stream Digital ("DSD") technology—in its production chain. Worse still, Defendant continued to misrepresent to consumers that it did not use digital mastering, or otherwise failed to disclose the use of digital mastering, while still charging the same price premium for the Records as if they were entirely analog recordings.*

**ANSWER:**   Defendant denies the allegations in this paragraph.

4.       *Analog records are coveted not only for their superior sound quality, but also for their collectability. Original recording tapes age, so only a limited number of analog recordings can be produced. Further, because analog tapes are those used to record songs in the studio, a record cut from original analog tapes is as close to the studio recording as one can get. Digital*

recordings, by contrast, do not carry as much value because they can be reproduced infinitely; once a digital recording is made, it can be copied as many times as a person desires.

**ANSWER:** Defendant denies the allegations in this paragraph. Further answering Defendant states as follows: all vinyl records are by definition "analog" but the value of any particular record (whether produced from analog or digital original master recordings, or whether there is or is not a digital process used in the initial recording, editing, mixing, remixing, mastering, or remastering) depends on many variables, including, without limitation, a record's content and scarcity. Vinyl records produced with Mofi's proprietary mastering and production processes, whether they include the use of neutral and audibly-transparent DSD, or not, are recognized in the industry and trade as superior sounding records and they cannot be produced infinitely.

5. *Thus, when Defendant began using a digital mastering process in its Records as opposed to purely analog, it inherently produced less valuable records—because the records were no longer of limited quantity and were not as close to the studio recording—yet still charged the higher price it proscribed to the allegedly all-analog recording process.*

**ANSWER:** Defendant denies the allegations in this paragraph.

6. *Had Defendant not misrepresented that the Records were purely analog recordings, or otherwise disclosed that the Records included digital mastering in their production chain, Plaintiff and putative Class Members would not have purchased the Records or would have paid less for the Records than they did.*

**ANSWER:** Defendant denies the allegations in this paragraph.

7. *Plaintiff and Class Members were accordingly injured by the price premium they paid for inferior Records.*

**ANSWER:** Defendant denies the allegations in this paragraph.

8.      *Plaintiff brings this action individually and on behalf of a class of all other similarly situated purchasers to recover damages and restitution for: (i) breach of express warranty; (ii) breach of implied warranty, (iii) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, et seq., (iv) fraud, (v) unjust enrichment, (vi) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCTPA"), N.C.G.S. §§ 75-1.1, et seq., and (vii) violation of state consumer fraud acts.*

**ANSWER:**    Defendant admits that Plaintiff purports to bring this action as a class action, but denies the basis for such an action and denies this action meets class certification requirements. Defendant denies the remaining allegations in this paragraph, except as otherwise admitted.

### ***PARTIES***

9.      *Plaintiff Adam Stiles is a resident of Charlotte, North Carolina and has an intent to remain there, and is therefore a citizen of North Carolina. Mr. Stiles has purchased various records from MoFi over the years. Most recently, in or about February 2022, Mr. Stiles purchased The Pretenders' self-titled debut album for approximately $40, directly from MoFi via MoFi's website while Mr. Stiles was in North Carolina. Prior to and at the time of purchase, Mr. Stiles reviewed the representations on MoFi's website regarding the Record, including that the Record was an "original master recording," as well as representations on the Record itself that the Record was made using the "Gain 2 Ultra Analog System," which "only utilize[s] first generation original master recordings as source material," and that "any sonic artifacts present are a product of the original master tape." Nowhere on either the website or on the Record itself was there a representation that digital mastering or DSD was used as part of the recording or mastering process. Mr. Stiles relied on these representations and omissions in deciding to purchase the Record. Accordingly, these representations and omissions formed the basis of the bargain in that, had Mr. Stiles been aware*

4

*that the Record used digital remastering or DSD technology, he would not have purchased the Record, or would have paid significantly less for it. In or about July 2022, Mr. Stiles discovered that his Record used DSD technology as part of the mastering chain.*

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph as they relate to Plaintiff and therefore denies the same. Defendant denies the remaining allegations in this paragraph.

10. *Defendant Mobile Fidelity Sound Lab, Inc. is an Illinois corporation with a principal place of business at 1811 West Bryn Mawr Avenue, Chicago, Illinois 60660. Defendant produced and sold the Records to consumers throughout the United States, including in the state of North Carolina.*

**ANSWER:** Defendant admits the allegations in this paragraph.

### *JURISDICTION AND VENUE*

11. *This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are approximately 5,000 members of the putative class, and Plaintiff, as well as most members of the proposed Class, are citizens of states different from Defendant.*

**ANSWER:** Defendant admits that the Court has subject matter jurisdiction over this action. Defendant denies the remaining allegations in this paragraph.

12. *This Court has general personal jurisdiction over Defendant because Defendant is incorporated and maintains its principal place of business in Illinois.*

**ANSWER:** Defendant admits that the Court has personal jurisdiction over Defendant and denies the remaining allegations in this paragraph.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

**ANSWER:** Defendant admits that venue is proper in this Court because Defendant resides in this District.

## FACTUAL ALLEGATIONS

### I. An Overview Of The Record Production Process And Analog Versus Digital Technologies

14. The production of a vinyl record begins with a studio recording. Specifically, a musician will record an album at a studio, and the songs on the album will be preserved and finalized on an analog tape. This tape is known as the "original master recording."

**ANSWER:** Defendant denies the allegations in this paragraph. Defendant further answers that it is well-know and understood in the industry that original master recordings of songs can be either analog or digital recordings, and "preserved and finalized" on analog tape, digital tape, or other digital media.

15. To make (or "cut") a vinyl record from an analog tape, a sound engineer uses a console (called a "lathe") to cut grooves into a vinyl record that create the sounds on the tape.

**ANSWER:** Defendant admits the allegations of this paragraph in part and denies them in part. Defendant admits that to make or cut a vinyl record from an analog (or digital) tape, a sound engineer uses a lathe, but denies that the lathe is used to cut grooves into a vinyl record. Defendant denies the remaining allegations of this paragraph.

16. Vinyl records made in this manner are considered "cut from the analog" or "all-analog recordings" because they are made directly from the analog (or studio) tapes. However, making a vinyl record this way is a time-intensive process. Further, making a vinyl record in this

*manner means constantly playing the analog tape, which can cause the tape to deteriorate over time.*

**ANSWER:** Defendant denies the allegations in this paragraph. Defendant further answers that either original digital or analog master recordings can be the original source material cut on a lathe to make "analog" vinyl records and that Defendant's "One-Step" process is done at a considerably greater expense than the conventional vinyl record manufacturing process, but it produces what the industry has long-acknowledged are superior sounding and highly collectible records, whether or not a DSD capture step is used in the process.

17. *To avoid the problem of deterioration, some vinyl records today are made from digital recordings. In this scenario, the analog tape is copied to a digital recording. That digital recording is then used to press the vinyl record, instead of the original analog tape.*

**ANSWER:** Defendant denies the allegations in this paragraph.

18. *The advantage of digital recording is that once a recording is digitized, it can be copied endlessly, allowing producers to save on costs and prevent the analog tape from deteriorating. That is, whereas an all-analog recording means playing the analog tape as many times as a producer would like to make a vinyl record, digital means playing the analog tape once to record it to digital, and then using the digital recording to press the vinyl record. However, some of the sound quality is lost when an analog tape is converted to digital, and digital records are not as collectible or valuable as all-analog records because digital records can be infinitely produced.*

**ANSWER:** Defendant denies the allegations in this paragraph. Defendant further answers that its use of a neutral and audibly-transparent DSD capture step in its proprietary mastering process does not involve endless copying by or cost savings to Defendant. See Defendant's Answers to Paragraph Nos. 4 and 16 above. Contrary to Plaintiff's misrepresentations, Defendant

spends much more time and incurs much more expense in the mastering and production of its records which utilize a DSD capture step than those produced without it, or produced by others utilizing conventional "all-analog" methods. This is done in accordance with Defendant's philosophy of using the best technology available at any given time, to produce the best-sounding records possible, and to provide its customers with the superior listening experiences for which it is known.

19.     *One method of creating a digital recording is "direct stream digital" or "DSD." DSD captures audio from the analog tapes at a higher resolution than other digital formats, and the DSD recording can then be used to mass produce a vinyl record. DSD creates this higher resolution by sampling the analog tape audio at a higher rate per second than other digital formats. Whether DSD is superior to other digital formats, however, it is nonetheless a digital recording that diminishes the quality and collectability Comparex to all-analog recordings.*

**ANSWER:**     Defendant denies the allegations in this paragraph.  Defendant further answers that it has found DSD to be neutral and transparent audibly, and when it is chosen to be used in Defendant's proprietary mastering process in combination with Defendant's proprietary state-of-the-art equipment, it does not diminish, but rather enhances the quality of sound of records produced therefrom.  Defendant's proprietary process enables its highly-skilled, expert mastering engineers to extract more information from the original master recordings, which information is then sent back to the analog domain to be edited in analog and cut onto laquers on Defendant's analog lathe to create its superior sounding analog vinyl records.

**II.     *Defendant Misrepresents That Its Records Do Not Use Digital Technology, And Fails To Disclose The Use Of Digital Technology In Its Mastering Chain***

20.     *Defendant MoFi is a record label that specializes in the production of high-fidelity vinyl records. MoFi has produced records for various artists, many of which are limited release.*

**ANSWER:** Defendant admits the allegations in this paragraph.

*21.     MoFi also notes on its website that it "believes that mastering systems should be neutral and transparent. The essential idea is to unveil all the detailed musical information on the original master recording without adding deterioration, coloration or other sonic artifacts."*

**ANSWER:** Defendant admits the allegations in this paragraph.

*22.     MoFi produces and sells various types of vinyl records. Of note here are those Records that MoFi represents are "Original Master Recording" and/or part of the "Ultradisc One Step" series. Reasonable consumers purchasing the Records, including Plaintiff, understood MoFi's various representations and omissions regarding these records to mean that the Records were entirely analog recordings, with no digital mastering or DSD technology.*

**ANSWER:**   Defendant admits it produces and sells various types of vinyl records, including those in its "Original Master Recording" and "Ultradisc One Step" series.  Defendant denies the remaining allegations in this paragraph.

*23.     MoFi specifically designated the Records as "Original Master Recording[s]," including all Records produced as part of MoFi's "Ultradisc One Step" series. "In the music business, a master recording is the official original recording of a song, sound[,] or performance ... Master recordings can be distinguished as tapes, discs, pro tools session files and digital formats such as MP3s."[2] Thus, any consumer seeing the designation "Original Master Recording" would understand such a Record to be the "original recording of a song"—i.e., an all-analog recording— without any digital remastering.*

**ANSWER:**   Defendant admits that all of its Records labeled as "Original Master Recording" and "Ultradisc One Step" series are indeed sourced from the original master recordings.  Defendant denies the remaining allegations in this paragraph.

24.    *MoFi made it very clear which of its records were all analog and which were not via a banner on the front of each record. Specifically, the Records were labeled as "Original Master Recording"—such as the album Plaintiff purchased—connotating they were all-analog recordings, while those that were not all-analog were labeled as "Mobile Fidelity Sound Lab".*

**ANSWER:** Defendant admits that its descriptions of its records are accurate and denies all remaining allegations in this paragraph. Defendant further answers that the Original Master Recording label simply designates that the original master recordings were used as the source from which the Records labeled as such were produced, but it does not provide information as to whether the original master recordings were analog or digital recordings, whether a DSD capture step was used in the mastering of the Records, and/or as to the process by which Defendants produced the Records.

25.    *Of course, MoFi charged more for those records designated as "Original Master Recording" than those that were not.*

**ANSWER:** Defendant denies the allegations in this paragraph. Defendant further answers that it charged the same price for its "Original Master Recording" and "Mobile Fidelity Sound Lab" labeled Records, whether such Records were mastered and produced utilizing the more costly DSD technology, or not.

26.    *MoFi also represented to consumers on the Records themselves that the Records did not use digital remastering, or otherwise failed to disclose the same. For instance, prior to July 2022, each Record that was produced as part of the "Ultradisc One-Step" process included the following chart in the Record's sleeve describing the process:*

**ANSWER:** Defendant denies the allegations in this paragraph.

27.     *The chart shows the original master recording being transferred directly to the vinyl recording, without any intermediary step involving a digital remaster. The chart was also prominently displayed on the "Ultradisc One-Step" category of MoFi's website prior to July 2022.*

**ANSWER:**  Defendant admits the chart was displayed on Defendant's website prior to July 2022, but denies the remaining allegations in this paragraph.

28.     *The Record purchased by Plaintiff contains similar representations. For instance, the Record specifically notes in the Record's sleeve that "any sonic artifacts present are a product of the original master tape":*

**ANSWER:**  Defendant admits that such language was included on certain of its record sleeves and/or covers, but denies the remaining allegations in this paragraph.

29.     *Plaintiff's Record also notes it was made using MoFi's "Gain 2 Ultra Analog System for Vinyl." Aside from having "analog" in the name of the process, at the time Plaintiff purchased his Record, MoFi described the Gain 2 process as "only utiliz[ing] first generation original master recordings as source material for our releases."*

**ANSWER:**  Defendant admits the allegations in this paragraph. Defendant further answers that the Gain 2 Ultra Analog System for Vinyl refers to Defendant's analog lathe cutting system which does utilize the original master recordings as source material and which edits and cuts Records in the analog domain, whether or not a DSD capture step was used in their mastering.

30.     *Further, each Record is given its own page and description on MoFi's website. On none of these pages did MoFi indicate that any of its Records made use of digital mastering technologies such as DSD.*

**ANSWER:**  Defendant denies the allegations in this paragraph.

31.     *MoFi cemented these representations in various interviews it gave over the years. For instance, in 2010, one of MoFi's mastering engineers maintained that "every MoFi LP— which was originally recorded to analog—is cut from an analog master tape." This is in contrast to other companies, whose vinyl records "are now cut from digital masters." Thus, the interviewer noted MoFi records produced "pure analog ... sound[]."*

**ANSWER:**    Defendant denies the allegations in this paragraph.  Defendant further answers that the alleged quotes are inaccurate, taken out of context, and intentionally mislead and convey a false impression as to Defendant's actual and complete statements.

32.     *Similarly, in 2017, two of MoFi's mastering engineers gave an interview regarding MoFi's production process. When asked about the "Gain 2 Ultra Analog System"—the system used to produce the Record Plaintiff purchased—the mastering engineers noted that "some people ask us questions like is it an all analog master chain? It is."*

**ANSWER:**    Defendant denies the allegations in this paragraph.  Defendant further answers that the alleged quotes are inaccurate, taken out of context, and intentionally mislead and convey a false impression as to Defendant's statements.

33.     *Further, in 2020, MoFi sent customer service e-mails to consumers informing consumers "there is no analog to digital conversion in our vinyl cutting process. Any product that bears the ORIGINAL MASTER RECORDING stripe on the jacket lets the customer know that the Original Master Tape was used to produce the release."*

**ANSWER:**    Defendant denies the allegations in this paragraph.  Defendant further answers that the alleged quotes, from an isolated alleged email from one of Defendant's customer service representatives, are taken out of context by Plaintiff, and intentionally mislead and convey a false impression as to Defendant's statements.

34.     Based on these representations—on MoFi's website, on the Records themselves, in interviews, and in communications with consumers—Plaintiff and other purchasers of the Records were led to believe that all of the Records were entirely analog and mastered without the use of digital techniques like DSD. Simultaneously, MoFi did not disclose to consumers or otherwise state that the Records were mastered using digital techniques like DSD, and Plaintiff and other consumers believed the Records were all-analog based on these omissions.

   **ANSWER:** Defendant denies the allegations in this paragraph.

## III.   Defendant's Use Of Digital Technology And DSD In Its Mastering Chain Are Uncovered

35.     Prior to 2011, Defendant's representations were largely true. However, since 2011, Defendant has been making use of digital techniques such as DSD in its remastering chain. By the end of 2011, 60% of vinyl releases incorporated DSD, and MoFi's last non-DSD recording was in 2020.

   **ANSWER:** Defendant admits that all of its representations were true. Defendant also admits that since 2011, it has used DSD in its mastering process to capture as much information from master tapes as is currently technologically possible. Defendant also admits that by the end of 2011 at least 60% of its vinyl releases incorporated DSD, and that its last title cut from the master tape without utilizing a DSD capture step was released in 2022. Defendant denies the remaining allegations in this paragraph.

36.     MoFi never disclosed this fact, nor did it change its representations to reflect the fact that its Records were using DSD. Instead, MoFi intentionally hid this fact from consumers until a July 2022 interview where MoFi's engineers revealed the truth:

   Q:     A lot of people I feel are under the assumption that everything you guys have done and everything you've ever done has been from analog ... Are you doing everything analog or do we have any digital in the process?

   . . .

  *A: I think what you're getting at in the question ... is there any digital in the chain? We do have [] 4x DSD.*

  **ANSWER:** Defendant admits that its engineer stated the following:

  A: I think what you're getting at in the question ... is there any digital in the chain? We do have [] 4x DSD.

Defendant denies the remaining allegations in this paragraph.

  *37. In other words, these engineers revealed that MoFi has been using digital remastering—specifically, DSD—in its production chain, and that the Records were not in fact "all-analog" as previously represented.*

  **ANSWER:** Defendant denies the allegations in this paragraph.

  *38. Although MoFi moved quickly to rectify its misleading advertising and disclose the use of digital remastering in the Records, MoFi's corrections demonstrated the breadth of MoFi's representations and omissions and the material information MoFi misrepresented or failed to disclose. For instance, the product page for the Record Plaintiff purchased previously made no mention of the use of DSD technology.*

  **ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph regarding the specific record that Plaintiff purchased and therefore denies the same. Defendant denies the remaining allegations of this paragraph.

  *39. Now, MoFi's use of DSD is front and center.*

  **ANSWER:** Defendant denies the allegations in this paragraph.

  *40. Similarly, the chart MoFi included for its "Ultradisc One-Step" recordings made no mention of the use of DSD. Now, that chart has been amended to reflect the use of DSD in the production chain.*

**ANSWER:** Defendant admits the original chart made no mention of the use of DSD in its proprietary mastering process. Defendant denies the remaining allegations in this paragraph.

41. *These "corrective" representations demonstrate that not only were MoFi's misrepresentations and omissions done knowingly, but that MoFi failed to disclose or otherwise misrepresented material information to consumers regarding MoFi's production process.*

**ANSWER:** Defendant denies the allegations in this paragraph.

**IV.       Consumers Pay A Price Premium For All-Analog Recordings**

42. *MoFi's misrepresentations and omissions were not just disingenuous, they also caused economic injury to Plaintiff and other consumers.*

**ANSWER:** Defendant denies the allegations in this paragraph.

43. *Consumers are willing to pay a premium for all-analog recordings for numerous reasons. First, an analog recording is as close to a studio recording as one can get, "like reading literature in the original language," whereas "converting analog recordings to digital inevitably changes the sound in ways the band never intended." For that reason, many consumers maintain that analog recordings sound better than digital recordings.*

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph and therefore denies the same.

44. *Part of this is a result of the concept of "losslessness." When a recording is compressed so that it can be converted to digital, it loses frequencies "at the very highest and lowest of a record." By contrast, an analog recording maintains the full spectrum of frequencies. Digital recordings that maintain most of but not the entirety of the range of frequencies are referred to as "near-lossless," but are not the same as an entirely "lossless" recording:*

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph and therefore denies the same.

45. *Second, analog recordings are more collectible because only a limited quantity can be produced. Digital recordings are exact copies of one another that can duplicated indefinitely, theoretically without any loss in quality or degradation. So, once a digital recording is made, it can be copied infinite times and each copy will sound the same. However, this means digital recordings are not as collectible because there are an infinite number, and a vinyl record using digital remastering will sound the same as a digital record streamed on Spotify or Apple Music. By contrast, the original tapes degrade over time, meaning only a limited number of analog recordings can be made using the original master tapes until the tapes no longer function. Each analog recording may also sound different the further it is from the original (i.e., the first analog recording may sound different from the one-hundredth). However, that also means that analog recordings are more collectible and more valuable because only a limited number can be produced before the original master tape deteriorates.*

**ANSWER:** Defendant denies the allegations in this paragraph.

46. *MoFi recognizes that analog recordings are more valuable than digital recordings, which is why it charges a premium for the same. Indeed, the Records are the most expensive vinyl records that MoFi sells, ranging from $40 (for the Record Plaintiff purchased) all the way up to $125 for some of the "Ultradisc One-Step" recordings. By contrast, MoFi sells its digital recordings for $30 or less.*

**ANSWER:** Defendant denies the allegations in this paragraph.

47. *Accordingly, MoFi charged Plaintiff and other Class Members a premium based on MoFi's representations that the Records were all-analog, and MoFi's failure to disclose that*

the Records made use of digital technologies like DSD in the production chain. Had MoFi disclosed that its Records used DSD, or otherwise not mispresented that its Records were all-analog, Plaintiff and other Class Members would not have purchased the Records, or would have paid less for them. Plaintiff and Class Members were thus injured by the price premium attributable to MoFi's representations regarding the all-analog nature of its Records, and MoFi's omissions regarding the use of DSD or other digital technologies in the Record's production.

     **ANSWER:**  Defendant denies the allegations in this paragraph.

## CLASS ALLEGATIONS

    48.   **Class Definition:** Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff seeks to represent a class defined as all persons in the United States who purchased a Record prior to July 15, 2022 (the "Class"). Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, any member of the judge's immediate family, and any person who purchased a Record used.

     **ANSWER:**   To the extent a response is required, Defendant denies the allegations of Paragraph 48. Defendant further denies that class certification is appropriate in this action.

    49.   Plaintiff also seeks to represent a subclass consisting of Class Members who purchased the Records in North Carolina prior to July 15, 2022 (the "Subclass").

     **ANSWER:**   Defendant denies the allegations of Paragraph 49. Defendant further denies that class certification is appropriate in this action.

    50.   Collectively, the Class and the Subclass Class shall be known as the "Classes."

**ANSWER:**    Defendant denies the allegations of Paragraph 50. Defendant further denies that class certification is appropriate in this action.

51.    *Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.*

**ANSWER:**    Defendant denies the allegations of Paragraph 51. Defendant further denies that class certification is appropriate in this action.

52.    ***Numerosity:*** *The number of persons within the Classes is substantial, believed to amount to thousands of persons. It is, therefore, impractical to join each member of the Classes as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Classes are ascertainable and identifiable from Defendant's records.*

**ANSWER:**    Defendant denies the allegations of Paragraph 52. Defendant further denies that class certification is appropriate in this action.

53.    ***Commonality and Predominance:*** *There are well-defined common questions of fact and law that exist as to all members of the Classes and that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary between members of the Classes, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:*

(a)    *whether Defendant's labeling, marketing, and promotion of the Records was false and misleading;*

(b)  whether Defendant's conduct was unfair and/or deceptive; and

(c)  whether Plaintiff and Class and Subclass Members have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

**ANSWER:**  Defendant denies the allegations of Paragraph 53.

54.  **Typicality:** *The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading misrepresentations and omissions, purchased a Record in reliance on the same misrepresentations and omissions, and suffered a loss as a result of that purchase.*

**ANSWER:**  Defendant denies the allegations of Paragraph 54.

55.  **Adequacy of Representation:** *Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Classes. Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Classes, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Classes, to include additional claims as may be appropriate, or to amend the definition of the Classes to address any steps that Defendant took.*

**ANSWER:**  Defendant denies the allegations of Paragraph 55.

56.  **Superiority:** *A class action is an appropriate method for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which*

19

*individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes. Plaintiff anticipates no difficulty in the management of this action as a class action.*

**ANSWER:**    Defendant denies the allegations of Paragraph 56.

### *CAUSES OF ACTION*

#### *COUNT I*
#### *Breach of Express Warranty*

57.    *Plaintiff incorporates the foregoing allegations as if fully set forth herein.*

**ANSWER:**    Defendant incorporates by reference its responses to each preceding paragraphs as though fully set forth herein.

58.    *Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.*

**ANSWER:**    Defendant admits that Plaintiff purports to bring this case as a class action but denies that he is entitled to any of his requested relief.

59.    *Defendant, as the designer, manufacturer, marketer, distributor, producer, and/or seller, expressly warranted that the Records were "all-analog" recordings, as described throughout this Complaint.*

**ANSWER:**    Defendant denies the allegations in this paragraph.

60.    *In fact, these representations and warranties were false because the Records used digital technology in the recording chain and so were not "all-analog."*

**ANSWER:**     Defendant denies the allegations in this paragraph.

61.     *As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed because they would not have purchased the Records, or would have paid substantially less for them, if they had known that the Records were not "all-analog" recordings.*

**ANSWER:**     Defendant denies the allegations of Paragraph 61.

62.     *On August 17, 2022, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607. Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1.***

**ANSWER:**     Defendant admits it received a letter purportedly on behalf of Plaintiff. Defendant denies the remaining allegations in Paragraph 62.

### *COUNT II*
### *Breach Of Implied Warranty*

63.     *Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.*

**ANSWER:**     Defendant incorporates by reference its responses to each preceding paragraphs as though fully set forth herein.

64.     *Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.*

**ANSWER:**     Defendant admits that Plaintiff purports to bring this case as a class action but denies that he is entitled to any of his requested relief.

65.     *Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Records, impliedly warranted that the Records were "all-analog" recordings and did not make use of digital mastering technologies.*

**ANSWER:**     Defendant denies the allegations of Paragraph 65.

66.     *Defendant breached this warranty implied in the contract for the sale of the Records because the Records could not pass without objection in the trade under the contract description, the Records were not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiff and members of the Classes, and the Records do not conform to the promise or affirmations of fact made on website and packaging of the Records that the Records were "all-analog" and did not make use of digital mastering technologies in the production chain. U.C.C. §§ 2-313(2)(a), (e), (f). As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.*

**ANSWER:**     Defendant denies the allegations of Paragraph 66.

67.     *Plaintiff and members of the Classes purchased the Records in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.*

**ANSWER:**     Defendant denies the allegations of Paragraph 67.

68.     *The Records were not altered by Plaintiff or members of the Classes.*

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 that "[t]he Records were not altered by Plaintiff or members of the Classes," and therefore denies the same.

69.     *The Records were defective when they left the exclusive control of Defendant.*

**ANSWER:**     Defendant denies the allegations in this paragraph.

70.     *Defendant knew that the Records would be purchased and used without additional testing by Plaintiff and members of the Classes.*

**ANSWER:**     Defendant denies the allegations in this paragraph.

71.     *Plaintiff and members of the Classes did not receive the goods as warranted.*

**ANSWER:**     Defendant denies the allegations in this paragraph.

72.     *As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and members of the Classes have been injured and harmed because: (a) they would not have purchased the Records on the same terms if they knew that the Records were not "all-analog" and made use of digital technologies in the production chain; and (b) the Records did not have the characteristics, uses, or benefits as promised by Defendant.*

**ANSWER:**     Defendant denies the allegations of Paragraph 72.

73.     *On August 17, 2022, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607. Plaintiff's counsel sent Defendant a letter advising that Defendant breached an implied warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1.***

**ANSWER:**     Defendant admits it received a letter purportedly on behalf of Plaintiff. Defendant asserts that the remaining allegations of Paragraph 73 state legal conclusions and therefore do not require a responses. To the extent that a further response is required, Defendant denies the remaining allegations in Paragraph 73.

### COUNT III
### Violation Of The Magnuson-Moss Warranty Act,
### 15 U.S.C. §§ 2301, et seq.

74.     *Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.*

**ANSWER:**     Defendant incorporates by reference its responses to each preceding paragraphs as though fully set forth herein.

75.     *Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.*

**ANSWER:**     Defendant admits that Plaintiff purports to bring this case as a class action but denies that he is entitled to any of his requested relief.

76.     *The Records are consumer products as defined in 15 U.S.C. § 2301(1).*

**ANSWER:**     Defendant admits  the allegation of Paragraph 76.

77.     *Plaintiff and members of the Classes are consumers as defined in 15 U.S.C. § 2301(3).*

**ANSWER:**     Defendant admits the allegation of Paragraph 77 as it pertains to the Plaintiff.  Defendant denies the remaining allegations of this paragraph.

78.     *Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).*

**ANSWER:**     Defendant denies the allegations in Paragraph 78.

79.     *In connection with the marketing and sale of the Records, Defendant expressly and impliedly warranted that the Records were "all-analog" recordings and did not make use of digital technologies in the mastering chain. These representations and warranties were false and described above.*

**ANSWER:**     Defendant denies the allegations in Paragraph 79.

80.     By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiff and members of the Classes pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiff and members of the Class and Subclass.

**ANSWER:**     Defendant denies the allegations in Paragraph 80.

81.     Plaintiff and members of the Classes were injured as a direct and proximate result of Defendant's breaches because they would not have purchased the Records or would have paid significantly less for them if they knew the Records were not "all-analog" and made use of digital technologies in the production chain, and such representations were therefore false and misleading.

**ANSWER:**     Defendant denies the allegations in Paragraph 81

### COUNT IV
### Fraud

82.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

**ANSWER:**     Defendant incorporates by reference its responses to each preceding paragraphs as though fully set forth herein.

83.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

**ANSWER:**     Defendant admits that Plaintiff purports to bring this case as a class action but denies that he is entitled to any of his requested relief.

84.     As discussed above, Defendant provided Plaintiff and members of the Classes with false or misleading material information about the Records, namely that the Records were "all-analog" and did not make use of digital technologies in the production chain.

**ANSWER:**     Defendant denies the allegations in this paragraph.

85. *Similarly, as discussed above, Defendant failed to disclose material information to Plaintiff and members of the Classes, namely that the Records employed digital technologies in the production chain and were thus not "all-analog."*

**ANSWER:** Defendant denies the allegations in this paragraph.

86. *These misrepresentations and omissions were made with knowledge of their falsehood. Defendant manufacturers, produces, markets, and sells the Records. Further, Defendant has admitted in a statement by its president in August 2022 that it has been using digital technologies in the production chain of Records since as early as 2011.12 Defendant therefore knew that it employed digital technologies in the mastering chain of the Records.*

**ANSWER:** Defendant denies the allegations in this paragraph.

87. *The misrepresentations and omissions made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, was intended to induce, and actually induced Plaintiff and members of the Classes to purchase the Records.*

**ANSWER:** Defendant denies the allegations in this paragraph. .

88. *Defendant had a duty to disclose the use of digital recording technologies in the production chain to Plaintiff and members of the Classes because (i) Defendant was in a fiduciary relationship with Plaintiff and members of the Classes, (ii) Defendant had superior and exclusive knowledge of the use of digital technologies in its production chain, and (iii) Defendant made partial representations regarding the Records as described above, while failing to disclose that Defendant employed digital technologies in the production chain.*

**ANSWER:** Defendant denies the allegations in this paragraph.

89. *The fraudulent actions of Defendant caused damage to Plaintiff and members of the Classes, who are entitled to damages and other legal and equitable relief as a result.*

**ANSWER:**    Defendant denies the allegations in this paragraph.

### *COUNT V*
### *Unjust Enrichment*

90.    *Plaintiff incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.*

**ANSWER:**    Defendant incorporates by reference its responses to each preceding paragraphs as though fully set forth herein.

91.    *Plaintiff brings this claim individually and on behalf of members of the Classes against Defendant.*

**ANSWER:**    Defendant admits that Plaintiff purports to bring this case as a class action but denies that he is entitled to any of his requested relief.

92.    *Plaintiff and members of the Classes conferred benefits on Defendant by purchasing the Records.*

**ANSWER:**    Defendant admits the allegation of this paragraph as it pertains to the Plaintiff.  Defendant denies the remaining allegations of this paragraph.

93.    *Defendant has knowledge of such benefits.*

**ANSWER:**    Defendant admits the allegation of this paragraph as it pertains to the Plaintiff.  Defendant denies the remaining allegations of this paragraph.

94.    *Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and members of the Classes' purchases of the Records. Retention of moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Records were "all-analog" when they were not, and failed to disclose that the Records employed digital technologies in their production chain.*

**ANSWER:**    Defendant denies the allegations in this paragraph.

95.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and the members of the Classes for their unjust enrichment, as ordered by the Court.

**ANSWER:**     Defendant denies the allegations in this paragraph.

### COUNT VI
**Violation Of The North Carolina Unfair and Deceptive Trade Practices Act,
N.C.G.S. §§ 75-1.1, et seq.**

96.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

**ANSWER:**     Defendant incorporates by reference its responses to each preceding paragraphs as though fully set forth herein.

97.     Plaintiff brings this claim individually and on behalf of the members of the Subclass against Defendant.

**ANSWER:**     Defendant admits that Plaintiff purports to bring this case as a class action, but denies that he is entitled to any of his requested relief.

98.     At all times mentioned herein, Defendant engaged in acts and practices "affecting commerce" in North Carolina, as that term is defined by N.C.G.S. § 75-1.1(b), because Defendant's sale of the Records were business activities.

**ANSWER:**     Defendant denies the allegations in this paragraph.

99.     Defendant has committed unfair and deceptive acts or practices affecting commerce in violation of the NCTPA, namely the sale of the Records to consumers in North Carolina while falsely representing that the Records were "all-analog," and failing to disclose that the Records used digital technologies in their production chain.

**ANSWER:**     Defendant denies the allegations in this paragraph.

*100.    Defendant's misrepresentations and omissions, as described above, had the tendency to deceive the average consumer, including Plaintiff and Subclass Members.*

**ANSWER:**    Defendant denies the allegations in this paragraph.

*101.    Defendant's actions were unfair because they offended established public policy and were unscrupulous and substantially injurious to consumers.*

**ANSWER:**    Defendant denies the allegations in this paragraph.

*102.    Defendant's unfair and deceptive practices were material as they influenced purchasing and payment decisions by Plaintiff and Subclass Members.*

**ANSWER:**    Defendant denies the allegations in this paragraph.

*103.    Plaintiff and the Subclass have been damaged as a direct and proximate result of Defendant's deceptive and unfair practices.*

**ANSWER:**    Defendant denies the allegations in this paragraph.

*104.    Plaintiff and the Subclass are entitled to recover compensatory damages, treble damages, and reasonable attorneys' fees and costs.*

**ANSWER:**    Defendant denies the allegations in this paragraph. .

### COUNT VII
### *Violation Of State Consumer Fraud Acts*

*105.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.*

**ANSWER:**    Defendant incorporates by reference its responses to each preceding paragraphs as though fully set forth herein.

*106.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.*

**ANSWER:**     Defendant admits that Plaintiff purports to bring this case as a class action, but denies that he is entitled to any of his requested relief.

107.    *The Consumer Fraud Acts of the fifty states and the District of Columbia, listed below, prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce:*

**ANSWER:**     Defendant denies the allegations in this paragraph.

108.    *Defendant intended that Plaintiff and each of the other members of the Classes would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.*

**ANSWER:**     Defendant denies the allegations in this paragraph.

109.    *As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Classes have sustained damages in an amount to be proven at trial.*

**ANSWER:**     Defendant denies the allegations in this paragraph.

110.    *In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.*

**ANSWER:**     Defendant denies the allegations in this paragraph.

## ***PRAYER FOR RELIEF***

*WHEREFORE Plaintiff, on behalf of himself and the proposed Classes, respectfully requests that this Court enter an Order:*

(a)    *For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the members of the Classes;*

(b)    *For an order declaring the Defendant's conduct violates the statutes referenced herein;*

(c)    *For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;*

(d)    *For compensatory and punitive damages in amounts to be determined by the Court and/or jury;*

(e)    *An award of statutory penalties to the extent available;*

(f)    *For pre-judgment interest on all amounts awarded;*

(g)    *For an order of restitution and all other forms of monetary relief; and*

(h)    *For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.*

**ANSWER:**    Defendant denies that Plaintiff is entitled to judgment or damages, interest, fees, costs, or other relief of any kind against Defendant.

## ***JURY TRIAL DEMAND***

*Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury on all claims so triable.*

## **DEFENDANTS' ADDITIONAL DEFENSES**

Defendant states the following separate and additional defenses to Plaintiff's Complaint. In asserting these defenses, Defendant does not assume any burden of proof with respect to any issue where the applicable law places the burden upon Plaintiffs. Defendants reserve the right to amend and supplement the defenses asserted herein.

## **FIRST DEFENSE**

The Complaint and each claim contained therein fails to state a claim upon which relief can be granted.

## **SECOND DEFENSE**

All or some of Plaintiff's claims are barred by the applicable statute of limitations, including but not limited to the Magnuson Moss Warranty Act, the North Carolina Unfair and Deceptive Trade Practices Act, as well as the consumer fraud statutes for the States of Arizona,

Alabama, Arkansas, California, Colorado, Connecticut, Delaware, Washington, D.C., Florida, Georgia, Hawaii, Illinois, Idaho, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Montana, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Virginia, Utah, Vermont, West Virginia, Wisconsin, Wyoming, and Washington.

## THIRD DEFENSE

This action is not a proper class action pursuant to Federal Rule of Civil Procedure 23 because: (1) Plaintiff has failed to plead, and cannot establish, the necessary procedural elements for class treatment; (2) a class action is not an appropriate method for the fair and efficient adjudication of the Complaint's claims; (3) common issues of fact or law do not predominate; (4) Plaintiff's claims are not representative or typical of the putative class' claims; (5) Plaintiff is not the proper class representative; (6) Plaintiff and alleged putative class counsel are not adequate representatives for the alleged putative class; (7) there is not a well-defined community of interest in the questions of law or fact affecting Plaintiff and the members of the alleged putative class; and (8) the alleged putative class is not ascertainable and its members are not identifiable.

## FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because neither Plaintiff nor the putative class have sustained any losses or damages.

## FIFTH DEFENSE

If Plaintiff or any putative class members have sustained any damages, which Defendant denies, such were not caused or contributed to in any manner by any fault, negligence, gross negligence, fraud, want of care, or lack of due diligence by Defendant, but were caused in whole

or in part by the acts or omissions of others, whether individual, corporate or otherwise, whether named or unnamed in the Complaint, and for whose conduct Defendant is not responsible.

### SIXTH DEFENSE

If Plaintiff or any of the putative class members have sustained any damages, which Defendant denies, such were the result of intervening or superseding events, factors, occurrences or conditions, which were in no way caused by Defendant or anyone for whom they would be vicariously liable.

### SEVENTH DEFENSE

If Plaintiff or any of the putative class members have sustained any damages, which Defendant denies, such damages were caused in whole or in part by Plaintiff's and the putative class' failure to mitigate damages.

### EIGHTH DEFENSE

Any alleged damages were caused by non-parties, including potential indispensable parties, who have not been joined.

### NINTH DEFENSE

The claims and/or alleged damages of Plaintiff or the putative class members are barred, in whole or in part, by the principles of waiver and estoppel.

### TENTH DEFENSE

The claims and/or alleged damages of Plaintiff or the putative class members are barred, in whole or in part, by the defenses of unclean hands and/or laches.

### ELEVENTH DEFENSE

The claims and/or alleged damages of Plaintiff or the putative class members are barred, in whole or in part, because the named Plaintiff lacks standing.

## TWELFTH DEFENSE

To the extent any of Plaintiff or the putative class members recover in this action, they have failed to properly state a claim for attorney's fees.

## THIRTEENTH DEFENSE

To the extent any of the Plaintiff or the putative class members recover in this action, they have failed to properly state a claim for punitive damages. Furthermore, any claim for punitive damages is limited by the substantive and procedural due process rights conferred in the Constitutions of the United States and the States of Arizona, Alabama, Arkansas, California, Colorado, Connecticut, Delaware, Washington, D.C., Florida, Georgia, Hawaii, Illinois, Idaho, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Montana, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Virginia, Utah, Vermont, West Virginia, Wisconsin, Wyoming, and Washington, and by the substantive and due process rights conferred in any other Constitutions the Court may deem applicable.

## FOURTEENTH DEFENSE

To the extent any of the Plaintiff or the putative class members attempt to seek equitable relief, they are not entitled to such relief because they have an adequate remedy at law and cannot otherwise satisfy the elements of equitable relief, which have not even been pled.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled to a refund or repurchase.

**SIXTEENTH DEFENSE**

Plaintiff's subject Records were fit for their intended use, did not contain any nonconformities or defects, and complied with all express written warranties.

**SEVENTEENTH DEFENSE**

Plaintiff failed to provide Defendant notice within a reasonable time of any alleged breach of warranty and/or by continued use of the subject Records.

**EIGHTEENTH DEFENSE**

Plaintiff's claims may be barred by the failure to provide Defendant with a reasonable opportunity to cure any alleged defect.

**NINETEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because none of the defects alleged by Plaintiff were substantial.

**TWENTIETH DEFENSE**

Plaintiff knows or should have known that Defendant would want to inspect relevant evidence but failed to preserve relevant evidence in Plaintiff's possession, custody, or control for later examination and testing by Defendant, in a condition that would enable Defendant to perform a meaningful examination and testing, resulting in prejudice to Defendant.

**TWENTY-FIRST DEFENSE**

 Plaintiff did not rightfully reject or justifiably revoke acceptance of the subject Records and their components, or exercise any right to cancel the sale of the subject Records, so Plaintiffs are not entitled to damages or penalties under any state or federal statutes.

## TWENTY-SECOND DEFENSE

The subject Records, to the extent that they did not conform to the applicable warranties after Plaintiff purchased them, were returnable to and refundable by Defendant.

## TWENTY-THIRD DEFENSE

Plaintiff's claims are subject to the express terms, limitations, exclusions, and restrictions of any applicable express warranty.

## TWENTY-FOURTH DEFENSE

Plaintiff's claims may be barred by a limitation of remedies clause in any expressed warranty.

## TWENTY-FIFTH DEFENSE

Plaintiff's claims may be barred or limited by a limitation of damages clause in any expressed warranty.

## TWENTY-SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's damages, if any, were caused or contributed to by Plaintiff's own negligence, and thus any judgment or recovery must be reduced accordingly.

## TWENTY-SEVENTH DEFENSE

Plaintiff's claims for damages are limited to damages for accepted goods.

## TWENTY-EIGHTH DEFENSE

Plaintiff's claims for damages are subject to reduction, to account for the value of Plaintiff's use and enjoyment of the subject Records.

### TWENTY-NINTH DEFENSE

Plaintiff is barred from asserting each and every purported cause of action alleged in the Complaint, or from recovering any damages from Defendant, because Plaintiff would be unjustly enriched by any such recovery.

### THIRTIETH DEFENSE

Defendant's alleged failure to replace the subject Records, or to refund the purchase price for the subject Records, was not willful.

### THIRTY-FIRST DEFENSE

The Complaint, and each separate cause of action alleged in it, fails because Plaintiff's claims have been waived and terminated by release, accord, satisfaction, and/or novation and are barred by the doctrine of res judicata and/or collateral estoppel.

### THIRTY-SECOND DEFENSE

Certain claims asserted by Plaintiff fail as a result of a lack of privity with Defendant.

### RESERVATION OF RIGHTS

Defendant has insufficient knowledge or information upon which to form a belief as to whether they may have additional affirmative defenses that govern the claims asserted by Plaintiff and on behalf of persons claimed to be members of the proposed class. Defendant, therefore, reserve the right to raise additional defenses as appropriate.

### DEFENDANT'S PRAYER FOR RELIEF

Defendant denies that Plaintiff has any valid claims and denies that Plaintiff or the putative class members are entitled to any relief. For these reasons, Defendant respectfully requests the Court to:

(1)     dismiss the Complaint with prejudice;

(2)     deny Plaintiff's claims for relief;

(3)     award Plaintiff nothing by way of their Complaint;

(4)     award Defendant their costs of suit incurred in defending this action; and

(5)     award Defendant any other relief the Court deems just and proper.

Date: December 15, 2022                    **JOSEPH J. MADONIA & ASSOCIATES**

                                           By: /s/ Joseph J. Madonia
                                                   Joseph J. Madonia

                                           Joseph J. Madonia
                                           JOSEPH J. MADONIA & ASSOCIATES
                                           5757 North Sheridan, Suite 10A
                                           Chicago, Illinois 60660
                                           Telephone: (312) 953-9000
                                           Facsimile: (773) 654-5066
                                           Email: josephmadonia@gmail.com

                                           **BARNES & THORNBURG LLP**

                                           By:     /s/ Joseph F. Madonia
                                                     Joseph F. Madonia

                                           By:     /s/ Mark L. Durbin
                                                     Mark L. Durbin

                                           Joseph F. Madonia
                                           Mark L. Durbin
                                           BARNES & THORNBURG LLP
                                           One North Wacker Drive, Suite 4400
                                           Chicago, Illinois 60606
                                           Tel: (312) 214-5611
                                           Email: joseph.madonia@btlaw.com
                                           mark.durbin@btlaw.com

                                           Attorneys for Defendant

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 15, 2022, a copy of the foregoing was filed electronically.

Service of this filing will be made on all registered counsel by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.

**JOSEPH J. MADONIA & ASSOCIATES**

By:  <u>/s/ Joseph J. Madonia</u>
        Joseph J. Madonia

Joseph J. Madonia
JOSEPH J. MADONIA & ASSOCIATES
5757 North Sheridan, Suite 10A
Chicago, Illinois 60660
Telephone: (312) 953-9000
Facsimile: (773) 654-5066
Email: josephmadonia@gmail.com